UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

Plaintiff,

v.

Case No. 26-cr-041

JAVON D. GOLDEN-GIBSON,

Defendant.

## PLEA AGREEMENT

1.      The United States of America, by its attorney, William T. Berens, Assistant United States Attorney, and the defendant, Javon D. Golden-Gibson, individually and by attorney Dennise Moreno, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

## CHARGES

2.      The defendant has been charged in a two-count sealed charging document, which alleges violations of Title 18, United States Code, Sections 2119(1), 924(c), and 2(a).  In addition, the defendant is also charged as an adult in an information alleging a violation of Title 18, United States Code, Sections 2119(1) and 2(a).

3.      The defendant has read and fully understands the charges contained in both charging documents. He fully understands the nature and elements of the crimes with which he has been charged, and the charges and the terms and conditions of the plea agreement have been fully explained to him by his attorney.

4. The defendant voluntarily agrees to waive prosecution by indictment in open court.

5. The defendant voluntarily agrees to plead guilty to the charge in the information, set forth in full as follows:

**THE UNITED STATES CHARGES THAT:**

On or about December 20, 2025, in the State and Eastern District of Wisconsin, and elsewhere,

**JAVON D. GOLDEN-GIBSON,**

knowingly took a motor vehicle, which had been transported, shipped, and received in interstate and foreign commerce, from another person by force, violence, and intimidation, with the intent to cause death and serious bodily harm.

In violation of Title 18, United States Code, Sections 2119(1) and 2(a).

6. The defendant acknowledges, understands, and agrees that he is, in fact, guilty of the offense described in paragraph 5. The parties acknowledge and understand that if this case were to proceed to trial, the government would be able to prove the facts in Attachment A beyond a reasonable doubt. The defendant admits that these facts are true and correct and establish his guilt beyond a reasonable doubt. This information is provided for the purpose of setting forth a factual basis for the plea of guilty. It is not a full recitation of the defendant's knowledge of, or participation in, the offense.

**<u>PENALTIES</u>**

7. The parties understand and agree that the offense to which the defendant will enter a plea of guilty carries the following maximum penalties: up to 15 years' imprisonment, a $250,000 fine, up to 3 years' supervised release, and a mandatory $100 special assessment.

2

## DISMISSAL OF INFORMATION

8.      The government agrees to move to dismiss the juvenile information at the time of sentencing.

## ELEMENTS

9.      The parties understand and agree that in order to sustain the charge of motor vehicle robbery affecting interstate commerce, as set forth in Count One of the Information, the government must prove each of the following elements beyond a reasonable doubt:

a.  The defendant or his accomplice intentionally took a vehicle from a person;

b.  The defendant or his accomplice did so by means of force or violence, or by intimidation;

c.  The motor vehicle had been transported, shipped or received in interstate or foreign commerce; and

d.  The defendant or his accomplice intended to cause death or serious bodily injury in order to complete the taking of the vehicle.

## SENTENCING PROVISIONS

10.      The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

11.      The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

12.      The defendant acknowledges and agrees that his attorney has discussed the applicable sentencing guidelines provisions with him to the defendant's satisfaction.

3

13.     The parties acknowledge and understand that prior to sentencing the United States Probation Office will conduct its own investigation of the defendant's criminal history. The parties further acknowledge and understand that, at the time the defendant enters a guilty plea, the parties may not have full and complete information regarding the defendant's criminal history. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentencing court's determination of the defendant's criminal history.

## Sentencing Guidelines Calculations

14.     The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any right to be sentenced within any particular sentence range, and that the court may impose a reasonable sentence above or below the guideline range. The parties further understand and agree that if the defendant has provided false, incomplete, or inaccurate information that affects the calculations, the government is not bound to make the recommendations contained in this agreement.

## Relevant Conduct

15.     The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge may consider relevant conduct in calculating the sentencing guidelines range, even if the relevant conduct is not the subject of the offense[s] to which the defendant is pleading guilty.

## Base Offense Level

16.     The parties agree that the applicable base offense level for the offense charged in the Information is 20 under Sentencing Guidelines Manual § 2B3.1(a).

4

**Specific Offense Characteristics**

17.     The parties agree to recommend that a six-level increase under Sentencing Guidelines Manual § 2B3.1(b)(2)(B) is applicable to the offense level for the offense charged in the Information because a firearm was otherwise used.

18.     The parties agree to recommend that a two-level increase under Sentencing Guidelines Manual § 2B3.1(b)(5) is applicable to the offense level for the offense charged in the Information because the offense involved a carjacking.

19.     The parties agree to recommend a two-level increase under Sentencing Guidelines Manual § 3C1.2 for reckless endangerment during flight.

**Acceptance of Responsibility**

20.     The government agrees to recommend a two-level decrease for acceptance of responsibility as authorized by Sentencing Guidelines Manual § 3E1.1(a), and to make a motion recommending an additional one-level decrease as authorized by Sentencing Guidelines Manual § 3E1.1(b), but only if the defendant exhibits conduct consistent with those provisions.

**Sentencing Recommendations**

21.     Both parties reserve the right to provide the district court and the probation office with any and all information which might be pertinent to the sentencing process, including but not limited to any and all conduct related to the offense as well as any and all matters which might constitute aggravating or mitigating sentencing factors.

22.     Both parties reserve the right to make any recommendation regarding any other matters not specifically addressed by this agreement.

23.     The government agrees to recommend a sentence no higher than the low-end of the sentencing guidelines as calculated by the court, or 84 months' imprisonment. The defendant

5

agrees to recommend a prison sentence no lower than 42 months' imprisonment, followed by a term of supervised release.

<u>**Court's Determinations at Sentencing**</u>

24. The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United States Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraphs 7 and 8 above. The parties further understand that the sentencing court will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

25. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentence imposed by the court.

<u>**FINANCIAL MATTERS**</u>

26. The defendant acknowledges and understands that any and all financial obligations imposed by the sentencing court are due and payable in full upon entry of the judgment of conviction. The defendant further understands that any payment schedule imposed by the sentencing court shall be the minimum the defendant is expected to pay and that the government's collection of any and all court imposed financial obligations is not limited to the payment schedule. The defendant agrees not to request any delay or stay in payment of any and all financial obligations. If the defendant is incarcerated, the defendant agrees to participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the court specifically directs participation or imposes a schedule of payments.

6

27.     The defendant agrees to provide to the Financial Litigation Program (FLP) of the United States Attorney's Office, upon request of the FLP during any period of probation or supervised release imposed by the court, a complete and sworn financial statement on a form provided by FLP and any documentation required by the form.

## Special Assessment

28.     The defendant agrees to pay the special assessment in the amount of $100 prior to or at the time of sentencing.

## Restitution

29.     The defendant agrees to pay restitution as ordered by the court at or before the time of sentencing. The defendant understands that because restitution for the offense is mandatory, the amount of restitution shall be imposed by the court regardless of the defendant's financial resources. The defendant agrees to cooperate in efforts to collect the restitution obligation. The defendant understands that imposition or payment of restitution will not restrict or preclude the filing of any civil suit or administrative action.

## DEFENDANT'S WAIVER OF RIGHTS

30.     In entering this agreement, the defendant acknowledges and understands that he surrenders any claims he may have raised in any pretrial motion, as well as certain rights which include the following:

    a.    If the defendant persisted in a plea of not guilty to the charges against him, he would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

    b.    If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it

7

could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

c.  If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.

d.  At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government is relying to obtain a conviction and he would have the right to cross-examine those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on his own behalf. The defendant would be entitled to compulsory process to call witnesses.

e.  At such trial, defendant would have a privilege against self-incrimination so that he could decline to testify and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify on his own behalf.

31.  The defendant acknowledges and understands that by pleading guilty he is waiving all the rights set forth above. The defendant further acknowledges the fact that his attorney has explained these rights to him and the consequences of his waiver of these rights. The defendant further acknowledges that as a part of the guilty plea hearing, the court may question the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant intends to plead guilty. The defendant further understands that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

32.  The defendant acknowledges and understands that he will be adjudicated guilty of the offense to which he will plead guilty and thereby may be deprived of certain rights, including but not limited to the right to vote, to hold public office, to serve on a jury, to possess firearms, and to be employed by a federally insured financial institution.

33.     The defendant further agrees to mandatory transfer into adult prosecution pursuant to Title 18, United States Code § 5032, based upon his two prior adjudications for crimes of violence.  The defendant waives any legal challenge to his transfer to adult prosecution.

34.     The defendant knowingly and voluntarily waives all claims he may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment. The defendant agrees that any delay between the filing of this agreement and the entry of the defendant's guilty plea pursuant to this agreement constitutes excludable time under the Speedy Trial Act.

35.     Based on the government's concessions in this agreement, the defendant knowingly and voluntarily waives his right to appeal his conviction or sentence in this case and further waives his right to challenge his conviction or sentence in any post-conviction proceeding, including but not limited to a motion pursuant to 28 U.S.C. § 2255. As used in this paragraph, the term "sentence" means any term of imprisonment, term of supervised release, term of probation, supervised release condition, fine, forfeiture order, and restitution order.  The defendant's waiver of appeal and post-conviction challenges includes the waiver of any claim that (1) the statutes or Sentencing Guidelines under which the defendant is convicted or sentenced are unconstitutional, and (2) the conduct to which the defendant has admitted does not fall within the scope of the statutes or Sentencing Guidelines.  This waiver does not extend to an appeal or post-conviction motion based on (1) any punishment in excess of the statutory maximum, (2) the sentencing court's reliance on any constitutionally impermissible factor, such as race, religion, or sex, (3) ineffective assistance of counsel in connection with the negotiation of the plea agreement or sentencing, or (4) a claim that the plea agreement was entered involuntarily.

9

**Further Civil or Administrative Action**

36. The defendant acknowledges, understands, and agrees that the defendant has discussed with his attorney and understands that nothing contained in this agreement, including any attachment, is meant to limit the rights and authority of the United States of America or any other state or local government to take further civil, administrative, or regulatory action against the defendant, including but not limited to any listing and debarment proceedings to restrict rights and opportunities of the defendant to contract with or receive assistance, loans, and benefits from United States government agencies.

37. By entering this plea of guilty, the defendant waives any and all right to withdraw the defendant's plea or to attack the defendant's conviction or sentence, either on direct appeal or collaterally, on the ground that the Government has failed to produce any discovery material (other than information establishing the factual innocence of the defendant), including Jencks Act material, material pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), and impeachment material pursuant to *Giglio v. United States*, 405 U.S. 150 (1972), that has not already been produced as of the date of the signing of this Agreement.

**GENERAL MATTERS**

38. The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

39. The parties acknowledge, understand, and agree that this plea agreement will be filed and become part of the public record in this case.

40. The parties acknowledge, understand, and agree that the United States Attorney's office is free to notify any local, state, or federal agency of the defendant's conviction.

10

41.     The defendant understands that pursuant to the Victim and Witness Protection Act, the Justice for All Act, and regulations promulgated thereto by the Attorney General of the United States, the victim of a crime may make a statement describing the impact of the offense on the victim and further may make a recommendation regarding the sentence to be imposed. The defendant acknowledges and understands that comments and recommendations by a victim may be different from those of the parties to this agreement.

## **EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT**

42.     The defendant acknowledges and understands if he violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. Alternatively, the government may, in its discretion, ask the Court to be released from specific obligations under this plea agreement to reflect the defendant's conduct if the defendant commits a federal, state, or local offense punishable by a term of imprisonment exceeding one year or violates a material term of the plea agreement.   The defendant further acknowledges and understands that the government's agreement to dismiss any charge is conditional upon final resolution of this matter. If this plea agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of this agreement. The defendant hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations for any charges filed against the defendant as a result of his breach of this agreement. The defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing. If the defendant and his attorney have signed a proffer letter in connection with this case, then the defendant further acknowledges and understands that he continues to be subject to the terms of the proffer letter.

11

## VOLUNTARINESS OF DEFENDANT'S PLEA

43.     The defendant acknowledges, understands, and agrees that he will plead guilty freely and voluntarily because he is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.


Date: 05/15/26

JAVON D. GOLDEN-GIBSON
Defendant


I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.


Date: 05/15/25

DENNISE MORENO
Attorney for Defendant


For the United States of America:


Date: 05/15/26

WILLIAM T. BERENS
Assistant United States Attorney

13

**United States v. Javon Golden-Gibson**
*Attachment A:*

On Saturday, December 20th, 2025, AV-1 contacted the Milwaukee Police Department to report a robbery of his motor vehicle at the address of 33XX North 22nd Street, in the City and County of Milwaukee, State of Wisconsin, at approximately 10:30PM. Detective Nora Burlo conducted an interview with AV-1, who stated that on December 20, 2025, AV-1 was working as a Lyft (rideshare driver) using his 2019 blue Nissan Sentra (which was transported in interstate commerce prior to this robbery) with Wisconsin license plate number AEXXXX. AV-1 stated that he picked up a fare using the Lyft mobile application at approximately 9:00PM- 9:30PM with the pick-up location being in the area of S. 22nd Street and W. Greenfield Avenue. This location would later be confirmed to be 22XX W. Orchard Street (Milwaukee, Wisconsin). AV-1 stated when he arrived at this location two black male individuals were waiting for him and got into his vehicle.

AV-1 stated that he drove both subjects to the location of 33XX N. 22nd Street and stopped his vehicle to let them get out. AV-1 stated that one of the suspects then grabbed his jacket, restraining him against his front driver seat. AV-1 stated that the other subject opened his front driver seat door and proceeded to point a semi-automatic handgun to the side of AV-1's face. AV-1 stated that he believed that the subject with the gun was going to shoot him. The armed subject ordered AV-1 out of the vehicle at gunpoint and ordered him to, "Give me your shit!" while physically going through his pockets. The suspects removed his wallet containing approximately $700.00 in US currency, his Wisconsin driver's license, social security card, two bank cards, and his Apple brand iPhone cellular telephone. AV-1 stated both suspects got into his vehicle and drove southbound, taking his vehicle without consent.

AV-1 provided the following physical descriptions of the suspects in this offense:

a. SUSPECT #1: Black male, 20-25 years old, 5 feet, 10 inches in height, slim build, in all black clothing and armed with handgun.
b. SUSPECT #2: Black male, 20-25 years old, 5 feet, 10 inches in height, slim build, in all black clothing.

On December 21, 2025, Detective Donegan obtained records from Lyft which provided the following information related to the rideshare request that preceded the carjacking:

Passenger Username: Jaden G
Passenger Phone Number: 414533XXXX
Passenger Email Address: XXXXXXXX[1]086@gmail.com
Ride Pick up date/time: 10:16:38 PM (Dec. 20, 2025)
Intended Destination: N 23rd St & W Hopkins St, Milwaukee, WI, United States
Actual Drop off: 30XX N Teutonia Ave, Milwaukee, WI 53206, United States
Ride Drop off date/time: 10:39:16 PM (Dec. 20, 2025)

---

[1] This email address included Golden-Gibson's first name and a variation on his last name

On December 21, 2025 at 10:59AM, West Allis Police Officers responded to the area of S. 58th Street and W. National Avenue in West Allis, Wisconsin, to check for AV-1's stolen 2019 blue Nissan Sentra, where they observed the vehicle and attempted to stop it. The vehicle fled from the officers and took them on a 1.38 mile pursuit through the City of West Allis hour.

The Nissan Sentra crashed in the approximate area of S. 80th Street and W. Morgan Avenue and fled on foot briefly with his passengers before being arrested. Golden-Gibson fled from the driver's door of the vehicle. A black colored Glock Model 22, with Solofish SL 1108 Tactical Light along with a .22 caliber extended magazine was located on the rear driver's side seat of the Nissan Sentra. This firearm was recovered as evidence.

On December 22, 2025, Milwaukee Police Detectives conducted a *mirandized* interview of Golden-Gibson, who initially denied involvement in the carjacking offense but later admit to being present. Golden-Gibson stated that he (Golden-Gibson) did not have the gun during the robbery, but that he placed his hands on AV-1's shoulders to control his movements during the robbery. He further admitted to driving during the latter portion of the vehicle pursuit.

Golden-Gibson was subject to GPS monitoring pursuant to his supervision for a prior juvenile delinquency proceeding. Data from Golden-Gibson's device was consistent with being in the area of the Lyft pick up location, the Lyft's general travel path, and the eventual armed robbery carjacking location that all occurred on the date of 12/20/2025.